UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| KEVIN WAYNE SWEAT, | ) |
| Plaintiff, | ) |
| v. | ) No. 2:23-cv-00090-JPH-MKK |
| NORTON Officer, | ) |
| Defendant. | ) |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Kevin Wayne Sweat, an inmate at Wabash Valley Correctional Facility, alleges that he was subjected to excessive force by Defendant Officer Katherine Norton in violation of the Eighth Amendment. Officer Norton has moved for summary judgment. Dkt. [49]. For the reasons below, that motion is **DENIED**. The Court also **DENIES** Mr. Sweat's motion to add allegations to his complaint, which is effectively a motion to amend or supplement the complaint. Dkt. [60].

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-

1

finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573–74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Officer Norton has moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Sweat and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

On March 20, 2022, Mr. Sweat was working his prison job in sanitation in the Secured Housing Unit (SHU) of Wabash Valley, helping to clean trash and with related duties. Dkt. 50-1 at 25, 30 (Sweat deposition). The SHU has lower

2

and upper levels. *Id.* at 31. As Mr. Sweat was emptying a trash can on the first floor of the B west range of the SHU, he was struck in the back of his neck by an apple wrapped inside a rubber or nitrile glove, causing him severe pain. *Id.* at 33-34. He heard Officer Norton, who was on the second floor of the range, laugh after he was hit. *Id.* at 36. There was no one else in the area from where the apple was thrown. *Id.* According to Mr. Sweat, officers frequently threw fruit around the ranges, after wrapping them in gloves so they would not splatter. *Id.* at 34.

Officer Norton later apologized to Mr. Sweat, which he believed to be a "forced" apology. *Id.* at 36. She said, "I'm sorry. [I] didn't mean to throw it that hard." *Id.* Officer Norton also later admitted to an Internal Investigations officer that she threw the apple, though she described it as "tossing" it and an "accident" that it hit Mr. Sweat and she was unaware anyone might have been hit. Dkt. 50-4 at 2-3. The Internal Investigations report found Mr. Sweat's complaint about the incident to be "unsubstantiated." *Id.* at 1.

Although there is video footage from the date, time, and general area where the incident occurred, it does not show Officer Norton throwing the apple or an apple striking Mr. Sweat. The video footage does show:

- Mr. Sweat turning and walking down a hallway in the B West SHU range, carrying a trash bag. Ex. C at 10:09.
- Several seconds later, a round object wrapped inside a blue glove is seen coming out of the hallway where Mr. Sweat had just gone, rolling down the floor, which an officer then picks up and throws away. *Id.* at 10:17-10:22.

3

- A second object wrapped in a blue glove appears in the video about 30 seconds later, which another inmate picks up and throws away. *Id.* at 10:55-11:25. Mr. Sweat reappears in the footage during this time frame and can be seen performing his duties. *Id.*
- Later, there is video of Mr. Sweat performing job duties in another room and he points to his neck while talking to an officer. Ex. G at 2:40.

On March 21, 2022, Mr. Sweat visited a nurse complaining of pain in his neck radiating down his left shoulder. Dkt. 50-6 at 4. The nurse recorded during this visit that Mr. Sweat was "not sure what happened" while he was working the previous night. *Id.* The nurse noted that Mr. Sweat had an "alteration in comfort [r]elated to: bruise/contusion." *Id.* at 5.

On March 24, 2022, Mr. Sweat again visited a nurse about his neck pain, explaining that it was from being "hit in the back of the neck by an apple." *Id.* at 7. He also complained of having tingling in three fingers of his left hand. *Id.* The record indicates Mr. Sweat had additional medical visits about his neck pain, radiating down to his left hand, on March 28, June 8, July 7, August 17, and October 12, 2022, and January 1, May 16, and July 25, 2023; Mr. Sweat received various medications to address his pain. *Id.* at 11-30. An x-ray of Mr. Sweat's neck was taken on November 20, 2022, which indicated "[n]o bony abnormality cervical spine" and "C5 6 mild degenerative disc disease." *Id.* at 31. There is nothing in the record indicating how this x-ray result was interpreted by medical staff in relation to Mr. Sweat's ongoing neck pain and related complaints. Mr.

4

Sweat also had a mental health visit on March 28, 2022, noting "significant" anxiety related to the incident. *Id.* at 9-10.

Mr. Sweat filed this lawsuit on February 28, 2023. Dkt. 2. At screening, the Court dismissed claims against three other officers related to alleged failure to protect Mr. Sweat or failure to adequately address his grievances. Dkt. 16 at 7-8. However, it allowed a claim against Officer Norton to proceed under the Eighth Amendment for excessive use of force. *Id.* at 7. The magistrate judge's pretrial scheduling order set a deadline for amending pleadings of February 20, 2024. Dkt. 31 at 3. Officer Norton filed this motion for summary judgment on July 1, 2024. Dkt. 49. On November 7, 2024, well after the motion was fully briefed, Mr. Sweat filed a "motion to add to complaint." Dkt. 60. It alleges that Officer Norton had recently conducted a search of Mr. Sweat's cell, in violation of IDOC policy regarding contact between an inmate and a guard who had assaulted them. Officer Norton has objected to this motion.

### III.
### Discussion

**A. Motion to Add to Complaint**

The Court first addresses Mr. Sweat's motion to add to his complaint, which the Court construes as a motion to amend his complaint. "To amend a pleading after the expiration of the trial court's Scheduling Order deadline to amend pleadings, the moving party must show 'good cause.'" *Trustmark Ins. Co. v. Gen. & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005) (citing *Fed. R. Civ. P.* 16(b)). In other words, "[w]hen a plaintiff seeks to amend his complaint

5

after the expiration of the trial court's deadline to amend pleadings, the initial standard to be applied is not the 'freely given' standard of Federal Rule of Civil Procedure 15 . . . but rather the 'good cause' standard of Rule 16(b)." *Dowers v. Mize*, 2010 WL 2694995, at *2 (S.D. Ind. July 2, 2010). "Courts have a legitimate interest in ensuring that parties abide by scheduling orders to ensure prompt and orderly litigation." *Id.* In this situation, the Court is "entitled to apply the heightened good-cause standard of Rule 16(b)(4) before considering whether the requirements of Rule 15(a)(2) were satisfied." *Adams v. City of Indianapolis*, 742 F.3d 720, 733-34 (7th Cir. 2014). "The central consideration in assessing whether good cause exists is the diligence of the party seeking to amend." *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 852–53 (7th Cir. 2022) (citing, among others, Fed. R. Civ. P. 16(b)(1) (which provides that a district court may extend a missed deadline for "good cause" when a "party failed to act because of excusable neglect")).

    Mr. Sweat has not shown good cause for allowing amendment of the complaint at this late stage. This case had been pending for nearly two years when Mr. Sweat filed his motion. Discovery has been conducted and Defendants' motion for summary judgment on the narrow issue allowed to proceed in the screening order is fully briefed. Allowing amendment of the complaint would require Mr. Sweat to file a full, new complaint and for the Court to screen it.[1] There is also the possibility that any claims brought in an amended complaint

---

[1] Mr. Sweat has not attached a full and complete amended complaint to his motion as required by S.D. Ind. Local Rule 15-1.

might be misjoined with the single claim currently pending in this case. Last, any new claims could be subject to entirely new and different defenses, such as failure to exhaust remedies. In sum, allowing filing of an amended complaint now would not facilitate the efficient administration of justice but instead significantly delay resolution of this case.

If Mr. Sweat wishes to pursue the claims mentioned in his motion, he may file a new complaint in a separate cause of action which would be subject to screening under 28 U.S.C. § 1915A. Mr. Sweat's motion, dkt. [60], is **DENIED**.

### B. Summary Judgment Motion

#### 1. Excessive Force

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.*

When force is used as "a prison security measure . . . to resolve a disturbance," courts consider several factors to distinguish between good-faith and malicious force. *Id.* at 663 (explaining *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Here, however, Mr. Sweat's claim falls outside that framework because

7

the conduct at issue—being struck by an apple while performing his sanitation duties—was not the result of a perceived need to use force in response to safety threats or disruptive behavior. Dkt. 51 at 10 (Officer Norton acknowledging that she "was not responding to an incident where the use of force was necessary"). So, there is no question as to whether the use of any force was necessary—it wasn't.

Officer Norton nonetheless argues that she is entitled to summary judgment on the excessive force claim because Mr. Sweat has not designated evidence from which a jury could find that he was hit by an apple or that Officer Norton intentionally or maliciously hit him with it. Dkt. 51 at 11–14. Officer Norton has designated evidence from which a jury could find that the apple didn't strike Mr. Sweat or that she didn't intend to hit him. *See id.* at 6, 13. But Mr. Sweat's designated evidence also allows a jury to reasonably find the opposite—that Officer Norton deliberately threw an apple at Mr. Sweat that hit him in the neck, causing serious, long-lasting pain and harm to Mr. Sweat.

First, the apple hit Mr. Sweat hard enough to leave a lump on his neck and cause lingering injuries that required medical attention. *McCottrell*, 933 F.3d at 665 ("A jury may infer intent to make physical contact from the nature of the act taken"). Second, Officer Norton laughed when the apple struck Mr. Sweat. Based on those factual findings, a jury could reasonably infer that Officer Norton threw the apple at Mr. Sweat with substantial force. *See id.* at 664 (the extent of injury may "provide some indication of the amount of force applied . . . ."). And if a jury drew that reasonable inference, it could reasonably conclude that

8

Officer Norton acted with the malicious, sadistic purpose of causing Mr. Sweat to experience pain, since there was no legitimate reason to use force. *See Caffey v. Maue*, 679 F. App'x 487, 492 (7th Cir. 2017) (reversing grant of summary judgment in favor of prison guard who hit prisoner in the head with a wooden stick when prisoner did not pose a security threat, rejecting district court's reasoning that force used was "de minimis" and did not result in "significant injury").

Because those facts about Officer Norton's intent require credibility determinations and factual inferences, they must be decided by a jury at trial rather than at summary judgment. *See Washington v. Hively*, 695 F.3d 641, 643-44 (7th Cir. 2012) ("But subjective intent (a redundancy: intent is a mental state, hence subjective), unless admitted, has to be inferred rather than observed; judges and jurors are not mind readers."). It's enough, at this stage, that a jury could reasonably find intent to inflict pain on Mr. Sweat for no institutional purpose. *McCottrell*, 933 F.3d at 664-665.

Resisting this result, Officer Norton argues that the video footage evidence "seems to contradict" Mr. Sweat's testimony because it does not directly show Mr. Sweat being hit with an apple, that she threw it, or that Mr. Sweat could directly see who threw it. Dkt. 51. Those limitations to the video are true, but they don't contradict Mr. Sweat's testimony that Officer Norton was the only person in the area where the apple came from, and that Officer Norton admitted she threw the apple. So—again—whether the apple's striking Mr. Sweat was merely an "accident" or the result of malicious intent on Officer Norton's part is

9

an issue that a jury must resolve. *See Williams v. Brooks*, 809 F.3d 936, 942 (7th Cir. 2016) (citing *Scott v. Harris*, 550 U.S. 372, 379–80 (2007)) ("When the evidence includes a videotape of the relevant events, the Court should not adopt the nonmoving party's version of the events when that version is blatantly contradicted by the videotape."); *Ashman v. Barrows*, 438 F.3d 781, 784 (7th Cir. 2006) ("We are particularly leery of resolving issues involving a state of mind on summary judgment."). "Summary judgment is notoriously inappropriate for determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles." *McGreal v. Ostrov*, 368 F.3d 657, 677 (7th Cir. 2004) (cleaned up). Credibility issues will defeat summary judgment if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility." *Outlaw v. Newkirk*, 259 F.3d 833, 838 (7th Cir. 2001) (quoting Advisory Committee Notes to Fed. R. Civ. P. 56(e)).[2]

Finally, Officer Norton argues that striking Mr. Sweat with the apple was *de minimis* force as a matter of law. It is true that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action,'" *McCottrell*, 933 F.3d at 664, because the Eighth Amendment does not apply to "*de minimis* uses of force that are not of the kind that would be 'repugnant to the conscience of mankind.'" *Id.* (quoting *Hudson v. McMillan*, 503 U.S. 1, 9-10 (1992)). But an apple is a hard

---

[2] Officer Norton also suggests that Mr. Sweat himself believed she did not intend to hurt him. But that's not clear from the designated evidence. Dkt. 51 at 13. Although Mr. Sweat testified that Officer Norton apologized and indicated she did not mean to hurt him, he did not say that he agreed with her, so this remains an issue that a jury must decide. *See McCottrell*, 933 F.3d at 665 ("A jury may infer intent to make physical contact from the nature of the act taken").

object that can be used to exert substantial force and Mr. Sweat has alleged substantial injury. It's therefore up to a jury to decide if he's telling the truth. Moreover, a guard's statement that contact with an inmate was just "horseplay" or a "joke," dkt. 51 at 4, does not place it outside the realm of the Eighth Amendment. *See, e.g., DeSpain v. Uphoff*, 264 F.3d 965, 978 (10th Cir. 2011) (discharging pepper spray into cells "as a practical joke" and with no legitimate penological purpose violated Eighth Amendment).

For those reasons, the *Outlaw* case that Officer Norton relies on is readily distinguishable and does not support summary judgment here. In *Outlaw*, a prison guard slammed the cell cuffport hatch closed while an inmate's hand was in the cuffport, causing pain, swelling, and bruising. *Outlaw*, 259 F. 3d at 834. There was no dispute about what happened, but only why. The guard argued that it was an accident, he did not intend to harm the inmate, and his action was justified as a reasonable response to the threat presented by the inmate. *Id.* The court affirmed summary judgment because "even if . . . [the guard's] action [was] an unnecessary use of force, the *minor nature of the injury* coupled with *the absence of any other indicia of malice* on [the guard's] part would force us to conclude that it does not rise to the level of a constitutional violation." *Id.* at 840 (emphasis added).

Here, it's undisputed that Officer Norton's actions were not related at all to security. *See* dkt. 51 at 10. And Mr. Sweat has designated evidence that would allow a jury to find that he experienced substantial pain and a serious injury as a result of being struck by the apple. Dkt. 5-6 at 5; 7-31. That

11

evidence—which was absent from *Outlaw*—means that a jury could reasonably find a "malicious or sadistic" use of force if it reasonably infers that Officer Norton had the intent to hit Mr. Sweat with the apple. If it wasn't done to restore order or get control over an unruly inmate—as Officer Norton admits—why was it done? Certainly, a jury could instead believe Officer Norton's version of events and conclude that she accidently struck Mr. Sweat with the apple when she was trying to toss it into a garbage can. But the contested issues of material fact on that question preclude the Court from finding that Officer Norton is entitled to summary judgment on Mr. Sweat's excessive force claim.

### C. Qualified Immunity

Officer Norton asserts that she is entitled to qualified immunity for her actions. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 646 (1987)).

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). Although "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quotation marks omitted)).

Here, Mr. Sweat argues that Officer Norton is not entitled to qualified immunity. He admittedly does not cite a "closely analogous case finding the alleged violation unlawful," *Stockton*, 44 F.4th 605, 620 (2022). Dkt. 55. Instead, he argues that qualified immunity does not apply here because: (1) there are contested issues of material fact; and (2) any officer should know that it would violate an inmate's Eighth Amendment right to be free from the use of excessive

13

force to throw a hard object at an inmate for no reason. Dkt. 55. So, Mr. Sweat relies on the "third option" that may be used to show that a right is "clearly established"—that Officer Norton's conduct was "so egregious and unreasonable that no reasonable official could have thought he was acting lawfully." *Stockton*, 44 F.4th at 421; *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances.").

Officer Norton's argument presumes that Mr. Sweat being hit with the apple was an accident, dkt. 51 at 16, but as explained above there are material questions of fact about whether Officer Norton intended to hit Mr. Sweat with the apple. Also, Officer Norton does not dispute that there was no penological purpose that would support the use of any force. It's clearly established that an officer may not maliciously or sadistically use force on an inmate that is unrelated to a "'good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 39 (quoting *Hudson*, 503 U.S. at 7). Although this is a general rule, it would clearly apply here if the jury infers—as the evidence allows it to do—that Officer Norton had the intent to cause harm to Mr. Sweat, because it's undisputed that there was no need for the use of any force. So, if the jury makes factual findings in Mr. Sweat's favor, there is a clearly established constitutional violation. And given the admitted lack of any penological interest for the use of force, any reasonable officer would have known that, even if there isn't a closely analogous case involving an officer throwing a hard object at an inmate.

14

## IV.
## Conclusion

Officer Norton's motion for summary judgment is **DENIED**. Dkt. [49]. Also, Mr. Sweat's motion to add to his complaint, dkt. [60], is **DENIED**.

The Court prefers that Mr. Sweat be represented by counsel for the remainder of this action. Therefore, the Court now reconsiders its prior denial of Mr. Sweat's renewed motion for counsel, dkt. 59. The Court intends to recruit counsel for Mr. Sweat unless he files notice with the Court **within 14 days of this Order** that he wishes to proceed pro se through settlement negotiations and trial. Once counsel has been recruited, or if Mr. Sweat gives notice that he wishes to continue pro se, the Magistrate Judge is asked to schedule a telephonic status conference to discuss further proceedings.

**SO ORDERED.**

Date: 5/20/2025

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

KEVIN WAYNE SWEAT
280706
WABASH VALLEY - CF
Wabash Valley Correctional Facility
Electronic Service Participant – Court Only

Magistrate Judge Klump's Chambers